The court will now call one one seven eight seven six in re the marriage of Shelly L Muller and Christopher Muller. Are you ready to proceed? Thank You Chief Justice Garmon, members of the court, counsel. Sometimes in the law we're confronted with a problem where the inequity of the situation. Would you please? Oh sure. I'm sorry, Bill Moran on behalf of Mr. Mueller, the appellant in this case. Thank you. As I was saying sometimes in the law we're confronted with a problem where the inequity of a situation is obvious, it's inarguable, but there is some impediment standing in the way of leveling the playing field. This is one of those cases. What this case is not is a case where my client Christopher Mueller, a lieutenant with the Springfield Police Department who does not participate in Social Security, is looking for any type of an advantage or extra benefit because he doesn't participate in Social Security but because his wife does. Rather all he is seeking in this instance is a fair playing field so that the intent of the marital distribution laws concerning property in this state is met. That's a very important point because the touchstone of our system in distributing marital and non-marital property in disillusion of marriage proceedings in Illinois set by the legislature is that it be fair and equitable. Section 503D of the marriage and disillusion of marriage act couldn't be any clearer. After the trial court sets the marital property, the non-marital property, it, the trial court, shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors. In this case no one can seriously challenge the proposition that Christopher is suffering a financial injustice. In this case as Shelly gets to shield from all consideration, all consideration, the fact that she is going to receive Social Security benefits because she works in the private sector while Christopher has to put his entire policeman's pension including the part that takes place of Social Security into the marital pot to be distributed in the case. That can just not be fair. Usually when we're confronted with problems like this, attorneys and judges, we like a quick and easy resolution to what the issue is and say, well, we'll just make it fair. Unfortunately, that's where the impediment comes in in this case. If you want the issue of Social Security in the trial court in pretty much any manner, it's one of those issues where the trial judge essentially gives you the hand. You know, I'll say, judge, I think we need to consider, you know, this party's Social Security and you literally get, stop. We're not going to talk about that. Social Security is not relevant and the law says I can't talk about that. If you try to argue further, sometimes you get the point and say, hey, cut it out. And that's what happened in this case. We tried to make a record on this point. We had an expert witness, Ms. Mack, who is a mathematician, a certified financial planner, a divorce planner testify about her calculations and the trial judge in court said, you know what, Ms. Moran, I am sorry. We can't consider this. None of this evidence is relevant in this case. Mr. Moran, are you asking this court to adopt the Breitland rule that in all cases, the marital portion of a party's pension should be reduced by the amount of Social Security that the party would have received if he did participate in Social Security? Or should this court consider the issue, should the trial court rather, have to look at the issue in terms of equitable distribution of marital assets? I think you still have to look at equitable distribution because that's what's required. You have to look at all relevant factors in the case. But in this case, what the trial court has said and what the appellate court has said, it's not a factor. You can't consider it at all in this case, that the hand is up and it's not even a possibility to even the playing field. And again, that's what we're asking for. If you look at Shelley's arguments, though, she's saying federal preemption under the Supremacy Clause, Article 6, Clause 2, the Hisquierdo decision of the Supreme Court in 1979, that construed Section 407A of the Social Security Act, those are a hand in this case and we can't go past those. In effect, what they're arguing is that the federal preemption is the sword of Damocles that's going to come down and if we adopt this pension valuation methodology, that the feds are going to jump all over us, that the Supreme Court or Congress is going to say you've encroached on Social Security and we are not going to stand for that. The interesting thing is, this court has considered a similar issue before in the Crook case in 2014. And if you read Crook, it's almost as if the court is apologetic about what's going on. The court says clearly this is inequitable. It's not fair, but we believe in the facts of Crook, which are different from this case, but we believe we are precluded that the Supremacy Clause does step in and stop us. A lot, though, has happened since Crook. And as we detail in our brief, after Hiscadero, the great thing about the legal profession is we have a lot of ingenuity and we don't take no for an answer. They looked at that case where the Supreme Court looked pretty definite and said, you know what, there's got to be a way around this unfair situation. Are you asking us to overrule Crook or do we have to? You don't have to in this case because it's completely different. In Crook, what happened was the trial judge took what the participating spouse's benefits were. They were quantified. They were considered and said, I don't remember the exact figure, but let's say it's $1,500. You're going to receive $1,500 worth of benefits. Your spouse is not going to receive any. So what we're going to do is we're going to award more of the marital property to the non-participating spouse to take the place of those benefits. And that's Hiscadero, that's Crook. In this case, we're following the cases that started with Cornbleth in Pennsylvania in 1991 where an appellate court there came up with the idea that valuing the non-participating spouse's pension by offsetting what they would have received in Social Security, the part that takes the place of Social Security, and then awarding that pension and splitting it between the parties is the appropriate way to do it. The line of cases went from 91 in Cornbleth to then we went to the state of Ohio, Walker, in 96. Finally, by 2000, the Supreme Court of Arizona in Kelly did a very good job, went into the details, went into the constitutional law, went into the arguments that were made by both sides and ruled that that valuation was appropriate, that method was appropriate. Unfortunately, to the best of our knowledge, nobody ever appealed that or filed a petition for cert that decision. That is until we got to the Oregon case, the Harold versus Stedman case that we've talked about. I say this in our brief, but if you look at Harold and Stedman, it is literally a treatise on this subject. It goes through every fact, it goes through the constitutional history, it goes through the history of all the state court cases, it talks about Crook from Illinois, and it catalogs all those cases and all of the arguments that have been made. In the end, the court in Oregon said, this is appropriate. It doesn't violate section 407A. The interesting thing is, is a lot of times when we're dealing with federal statutes, they're not exactly clear and they're kind of convoluted. In this case, though, 407A couldn't be any shorter, more concise, or clearer. It says the right of any person to any future payment under this subchapter shall not be transferable or assignable at law or inequity and none of the monies paid or payable or rights existing under this constitution, levy, attachment, garnishment, all debt collection measures, or other legal process or to the operation of bankruptcy or insolvency law. When you get right down to it, if this methodology is another legal process, then preemption does apply. The Supremacy Clause does apply. But in Herald, the Supreme Court of Oregon decided that it didn't. Two important reasons. The first is they said that the United States Supreme Court had considered section 407A after Pescadero in 2003 in the case of Washington State Department of Social and They really limited what other legal processes are. In its decision, the United States Supreme Court said other legal processes should be understood to be processed much like the process of execution, levy, attachment, and garnishment, and in a minimum, would seem to require utilization of some judicial or quasi-judicial mechanism, though not necessarily an elaborate one, by which control over property passes from one person to another in order to discharge or secure discharge of an allegedly existing or anticipated liability. In this case, they just said 407A doesn't apply in this circumstance. We don't quantify the participating spouse's benefit from how many payments there are. Nothing. The only fact that we consider is that the participating spouse is participating in Social Security. The second point that was made, and it kind of goes to an earlier question, is in the state of Oregon, they had a similar situation where when they considered this issue recently, they had a prior decision that was somewhat on point. It was the Swann case. Swann was actually cited by this court in the Crook case, and in Swann, it was a 1986 case in Oregon, the Oregon Supreme Court essentially said no consideration. The hand is totally up. So the participating spouse, Mr. Harreld in Oregon, obviously pushed that case and said, hey, the hand is up here. No consideration. In the end, Harreld Court, the recent court, 2014, addressed Swann right away in its decision and said, you know what, we went a little too far in that decision, and they had to back off of Swann and say it's only good luck to its facts. This court doesn't have to do that in this case because in Crook, after it decided the issue, it said there is this other line of cases out there. The Kornblatt, the Walker, the Kelly cases. But it said nobody has said we're going to decide this question another day. And so the question was left wide open here in this state. In conclusion, the Oregon court in Harreld really broke things down to kind of a common sense type of level. It said just as few spouses who seriously planned for retirement would fail to consider their anticipated Social Security benefits, in the absence of a manifestly contrary congressional intent, courts should not be expected to devise a just and proper award of retirement benefits without considering, among other pertinent factors, the probable economic circumstances that each spouse will face when the division of such benefits becomes operational. Failing to consider Social Security benefits that a spouse reasonably expects to receive in the foreseeable future can result in a misleading impression of that spouse's financial circumstances and in turn can produce an inequitable allocation of the party's financial resources. We do not believe that Congress intended for the prohibitive grasp of the anti-assignment provision of section 407A to reach so far. So they believe that the spouse was in fact in the Social Security system and that does not violate federal preemption or the supremacy clause. After these two findings, that this was an other legal process and that we could consider the participating spouse's involvement in Social Security, the Oregon court just adopted the exact same plan that we detailed for the trial court in this case about how you would value one of these pensions in this circumstance. While we had an expert do it, it's not even that hard. It was difficult in our case because there was a very funny cost of living adjustment issue, but our expert testified that in order to get the Social Security Administration website punching a couple of numbers and it spits out for you what that benefit is, then that can be valued and it can be offset against the full value of the pension. We value pensions every day in divorce cases, same in county and all across the state, so it doesn't make the issue any more difficult for trial courts to resolve these things. This offset, as you just described, is a hypothetical one, correct? The expert went to the Social Security website and said had the police officer participated in Social Security, this is what he would have gotten, but he didn't. So it's a hypothetical number. Is there any other place in marital distribution that we use hypotheticals, speculative numbers like that? Hypothetical, it's not really the right word, because there is a portion of his benefits that he receives in lieu of Social Security, just like... It means that it's broken out somehow in his pension statement? I'm not sure I know what you mean. No, it's not broken out. Just by statute there's a percentage of his pay that's the government takes and then the employer matches. Same system is set up with the pension and then there's a level above that you receive for being a policeman in his case. In this instance I'm not aware of any other hypothetical type calculation that's done, but this one at least has relevance to actual numbers. You use the figures that the employee would have earned during their career, you plug them into the Social Security website and it gives you the answer. So it's based on actual facts. There's no speculation there. It doesn't move. There's no discretion that has to be used. It's flatly mapped. Therefore I would argue that it really isn't hypothetical, that it's based on what the facts are. In that same vein, the argument that since we can't use Shelley Social Security payments as an offset, let's take what Christopher would have been put into Social Security and reduce that from his pension and then come up with a number. It would appear that there would be cases, wouldn't there, by using that type of policy, such as Shelley, would be better off actually with an offset as to her own Social Security benefits versus this computation that comes out? It hasn't happened in this case. And again, that speculation about other cases that would be out there. In this instance, though, nobody would argue that what's happening with Christopher having to put that full pension, 100 percent of it, on the marital table to be split, while Shelley can say, you can't even consider the fact that I'm going to receive Social Security, that that is in any way fair. No court has ever said, yeah, that's a totally fair disposition. Right. But it appears to me that could happen. I guess it's possible. And then we're left with the dilemma where as far as an equitable distribution, you would never take into account the one spouse's Social Security benefits, but as a result of this formula, the spouse ends up worse off than if they had been, if the court had been allowed to look at the offset by the, in this case, Shelley's Social Security benefits. That's not what happened here. If you look at the decision, Shelley got $246,000 in liquid assets, retirement accounts, 401Ks. She got $56,000 worth of equity in a house. She got a $17,000 brand new car. And she got 35 percent, more than a third of my client's pension. While on the other half, my client got a $2,000 timeshare, $5,000 investment club, policeman's account, and 65 percent of his pension. So I suppose your answer is that's something that could be taken into account in other cases when assessing equitable distribution. And the court has that discretion because the statute says any other relevant factor, 503 instead of being limited in what a trial court could consider is really expansive. It allows, there's a provision that just says any other relevant factor. And so that's been, lots of different things have passed muster over the years as relevant factors. And in this case, that's what could happen. Your time has expired. Thank you. May it please the court? My name is Michelle Blackburn, and I represent the appellee in this case, Shelley Mueller. The issue in this case, your honors, is whether it is permissible in law or equitable in application to allow the trial court to consider a hypothetical asset, in this case, social security benefit, when determining how to divide a marital estate. In short, your honors, it is neither permissible in law or equitable in application. Therefore, we are asking that this court affirm the trial court and the appellate court in their decisions in this case. Counsel, it's just been argued or pointed out, I think, that over the last 25 years, other state courts have done this. If it violates federal law, then can you point to any case where the federal court has stepped in to invalidate it? I cannot point to any federal court case that has taken the matter when it has been petitioned to do so. And I don't know how often these cases, the cases that have been cited in my brief or the cases cited in Mr. Moran's brief, applied for cert to the United States Supreme Court. The only one that I'm aware of is, of course, the most recent one in Herald, where they applied for cert to the United States Supreme Court, and it was denied. But, of course, it was denied without any comment, so we have no idea why it was actually denied. If that is a fact, is it significant? If that is a fact, should it be significant for us? I don't believe it is significant in this case, because the federal court has already spoken on this issue. The federal court spoke on this issue in his squardio, where it said you can't directly consider Social Security and you can't use it as a basis of an offset. In that case, the wife actually requested either a portion of her husband's railroad pension benefits or an offset from the marital estate to compensate for the benefits she was not going to be able to receive. And the finding in that case, the holding in that his squardio case, is you can't do either. You can't give her part of his railroad retirement, and likewise, you cannot offset that. So I don't know that there's an issue really for the federal court to address, and maybe that's why the federal court denied cert in Herald and decided that it did not want to address it, because it has already addressed that issue before. We'll never know, because like I said, it was done without any sort of comment, so we have no idea why they denied cert. Your Honors, in this case, Mr. Mueller's arguments are fatally flawed on essentially three fronts. The first one is, there is no basis in Illinois law for what Mr. Mueller is asking this court to do. The Illinois Marriage and Dissolution of Marriage Act is not permitted to value hypothetical assets. Rather, the trial court is charged with placing a value on marital assets and marital debts and dividing equitably the value of the estate after considering those things. What Mr. Mueller is asking this court to do is to add an additional layer for the trial court, and that additional layer would be, now we're going to add another factor, and that factor is, any hypothetical asset that is out there, you need to put a value on it, too, in order to divide the marital estate. That is essentially what is being requested here by Mr. Mueller. And with regard to the question concerning whether or not Ms. Mueller would have been better off, or would be better off, if her Social Security benefits were considered and then offset rather than Mr. Mueller's, the fact in this case is, she absolutely would have been, because Mr. Mueller, the evidence was, Mr. Mueller was the higher wage earner for the majority of these parties' marriage. In fact, I believe there were points during the marriage where Ms. Mueller was not employed at all. So the likelihood that her Social Security benefit is going to be smaller than Mr. Mueller's hypothetical Social Security benefit, I believe, goes without question. The fact of the matter is, though, and in response to the Justice's question to Mr. Moran, even if you send this back to the trial court and ask the trial court or instruct the trial court to make that a factor, the federal law prohibits the trial court from making that a factor. That simply can never be a factor. The escort is very, very clear. The Social Security Act prohibits Ms. Mueller's Social Security benefits from being valued as a marital asset. So that simply cannot be done in this case. The bottom line on the state law, Social Security is not an asset. It is social insurance. It is not an entitlement. And Ms. Mueller may or may not ever receive the benefit of that at age 67. On the other hand, Mr. Mueller's benefit is without a doubt an asset of this estate. The sole purpose of this request that's before the court today is to allow Mr. Mueller to obtain the relief that he seeks by entering through the back door when he has been denied entry already through the proverbial front door in his guardio. So what he's saying is, I want to do an end run around his guardio and say, I'm not really considering Social Security benefits. What I'm really asking you to do doesn't have anything to do with the Social Security Act. And that's simply not true. Because the purpose of the Social Security Act is to protect the economic security of the state. And Ms. Mueller's economic security will absolutely be diminished by allowing Mr. Mueller to reduce her interest in his pension by considering what he would have paid into Social Security. And that, Your Honors, violates his guardio. As I said in my opening answer to the questions, his guardio made it clear. Federal benefits could not be directly or indirectly offset in any way in dividing of a marital estate. His guardio applies here because, as I said, federal interests are without a doubt involved, thus invoking the Supremacy Clause, because the proposed offset is going to penalize Ms. Mueller, who is the person that Congress has sought to protect via Social Security. According to Mr. Mueller's rationale, he can avoid the effect of that because he's not asking the court to offset Ms. Mueller's Social Security benefit, but rather asking you to pretend as though he paid into Social Security. It's interesting to note in Herald from the Supreme Court of Oregon, there was a very lengthy dissent in that case. And that dissent was, the basis of that dissent was, what you've done, Supreme Court of Oregon, violates his guardio. And the Herald dissent acknowledged that if a spouse cannot take Social Security benefits from the other spouse to compensate for the retention of the other person's Social Security benefits, it's difficult to understand how a spouse can withhold property for that very same reason. Is Mr. Mueller disadvantaged by the fact that he's not eligible for Social Security in the equitable division of the property? I don't believe that he is, because I don't believe he's not eligible for Social Security. He was married to Ms. Mueller for greater than 10 years, so he is eligible through that route for Social Security. He also has paid into Social Security, although not through his primary employment, but he has paid into Social Security from side jobs, if you will. And of course, because of the way the Springfield pension plan is set up, he is eligible for retirement at age 50 with full benefits. So in theory, he can go to work after age 50 at a full-time job where he would pay into Social Security and therefore receive Social Security benefits at age 67, just like Ms. Mueller would. And did the trial court have before it all of that information that you just talked about? The trial court had before it the age of retirement, the age that he would reach retirement. The trial court had before it the information concerning his employment via Social Security, but I'm not sure that the court really gave that any consideration because before the court got to that point, it had already determined that it was not going to be addressing anything that it believed violated Crook. And so I believe there was an offer of proof made after the fact and that maybe dealt with that issue, but I don't recall that specifically. Ms. Blackburn, isn't it true, though, anything that after the divorce or the divorce, he's not eligible for any of those things based on other things that occur? It absolutely is speculative, but to me it's no different for Mr. Mueller to suggest to the court that we should value an asset that is not an asset any more than it is speculative that he may actually have assets that we're unaware of. But I do agree, it's not the province of the trial court to assume what may happen in the future with people's employment or remarriage or whatever it is, but it's no different than Mr. Mueller's position that the trial court somehow has some sort of province to put a value on an asset that simply doesn't exist. And Mr. Mueller is receiving the benefit of that because if Social Security happens not to be there at age 67, Ms. Mueller receives nothing. Mr. Mueller, on the other hand, is getting a discount or is asking for a discount on his pension, and if Social Security wasn't there at 67, it wouldn't matter to him because he's already received his benefit by getting a greater portion of his pension. Well, it's more than speculative. Any post-retirement employment would also be post-dissolution. That is correct. And therefore wouldn't be a marital asset in any of them. That's correct. No different than this isn't a marital asset. I mean, Mr. Mueller's hypothetical Social Security isn't an asset. Ms. Mueller's actual Social Security is not an asset. So really the argument is no different except for one asks for some sort of speculation into the future, but none of them are assets. Your Honors, this court acknowledged in Crook the authority at this Guardio on these issues, and when Mr. Moran was arguing, the court asked whether or not there would have to be an overruling of Crook in order to give Mr. Moran the relief that his client is seeking, and I absolutely believe that this court would have to overrule Crook in order to do so because the holding in Crook was that you cannot divide directly or give an offsetting award because both would upset the statutory balance and impair the economic security. And the court went further to say that it was rejecting the analysis that had been done by other courts who had permitted trial judges to consider Social Security benefits as a factor because instructing the trial court to consider the actual difference in the distribution or it doesn't, and if it does not, then the consideration is without meaning, and if it does, then the monetary value of the Social Security benefits the spouse would have received is taken away from that spouse and given to the other spouse. So I don't think that there's any question that this court, because of its language, considering an offset, making an offset something that cannot be done if it were to reverse the decision of the appellate court in this case. Didn't Crook clearly state that the issue in this case was not before it and that the Crook did not address Kornbluth and Walker and Kelly, did it? No, you're correct. It did not address those. It did not address those because they were not being argued. But the only difference between Kornbluth and Walker and Kelly, the issue that was before this court in Crook, the issue before this court in Crook was can we consider wife Social Security, and obviously we can't because Asquario says we can't. Right, but that's not what's before this court, right? Right, and that wasn't what was before Kornbluth, Walker, and Kelly because I'm just saying how can the appellate court say that Crook is dispositive of this case when this is a different issue? I know you're saying the issues are necessarily tied together. Right, I believe that the appellate court found Crook to be dispositive based upon the offsetting language because, yeah, we're not directly giving any sort of benefit or directly dividing the pension, but we are giving an offset. We're giving an offset because we're reducing the value of a pension in order to do so. So that's why I believe the appellate court believed or held that Crook was dispositive of this and that's why I also believe that Crook would have to be overturned in order for this relief to be granted. Your Honor, Asquario and federal preemption compel the conclusion that was reached in Crook. And frankly, Kornbluth, Walker, and Kelly don't apply any sort of common sense in their holdings. Basically, Kornbluth, Walker, and Kelly all say we'll give you an offset for what you should have paid into Social Security and we're leaving it at that. You get a dollar for dollar offset and your pension benefit gets reduced by that amount. That approach does not serve the purpose of the Illinois Marriage and Dissolution of Marriage Act. The purpose of the Illinois Marriage and Dissolution of Marriage Act is to divide marital estate equitably. The proposed solution in this case is certainly not equitable because it reduces the value of the marital estate by $377,000 when you offset Mr. Mueller's hypothetical Social Security benefits against his pension. Ms. Blackburn, on that point, when you say a hypothetical portion of his pension, are you agreeing then flat out with what Mr. Moran said that when they calculate his pension, there's the Social Security portion plus the police pension? I do not believe that the Springfield police pension in its system says we're going to take X percent and put it into a pension fund. This much is for Social Security or what you're not going to pay into Social Security and this much is your actual contribution. I do not recall seeing that kind of provision anywhere. Well, let me ask you this way directly. Do we have anything in the record in this case from that retirement plan, documents that talk about how they calculate his pension? I do not believe that there is anything in the record. My understanding of the Springfield police pension plan is that it's actually statutorily mandated, so I believe I've tried to subpoena that before and I've been referred to the statutory authority instead. Let me ask you one other question. Under Section 407A of the Social Security safe harbor language, whatever you want to call it, what specific language is in that statute that prohibits the formula that Mr. Moran is advocating and excluding the creditor stuff, the levies, attachment, all that. I mean, that's for creditors, but that doesn't allow this valuation of the equity of trying to balance things out. What specifically in that language prohibits it? In the language of the Social Security Act? 407A. Well, in the language of the Social Security Act, the language that prohibits this is the other legal process language. Slow down. That's what I'm looking for, specific language. Are you saying just the phrase other legal process? Well, in the cases that have decided what that or interpreted what that other legal process means, and it's been interpreted to mean any judicial or quasi judicial taking of another person's property in order to satisfy some sort of portion of the statute, the Social Security Act that I believe is violated by what Mr. Mueller is suggesting be done in this case. Your Honors, the third argument that Mr. Mueller makes that is, in my opinion, unconscionable here is he argues that his suggestion on what to do in this case would be both equitable and flexible. Your Honors, there can be nothing more inequitable or more inflexible than what Mr. Mueller is suggesting here. He talks about a level playing field, but where is the level playing field for Ms. Mueller and people like Ms. Mueller under Mr. Mueller's proposed resolution? Mr. Mueller will retire full benefits at age 50, which is coming up in May of 2017. Ms. Mueller will retire, hopefully, with Social Security benefits at age 67, which will be May of 2033, 17 years after Mr. Mueller is eligible for retirement with full benefits. Now, Ms. Mueller did receive some IRA or 401k benefits from the trial court, but even at that she will not be able to receive those until she's 59 and a half, which again is going to be June of 2026. Your time has expired. Thank you, Your Honors. Thank you. Going right to that last question, one of the first things I wrote down was we heard Shelly's entire argument and she didn't point to any place in that other legal process. We cited to, the Herald Court cited to the estate of Koeffler case from 2003 where the Supreme Court of the United States again looked at 407A and said that other legal process had to imitate one of the other creditor's rights. I have to say Hiscadero on this record and now I'm going to have to say some Latin, but the phrase is ad justum generis. And that is if you have that line of very specific remedies. So in this case we have execution, levy, attachment and garnishment. If that's followed by a general term, the general term only applies to things that are very similar to the previously delineated terms. Therefore in this case there isn't a violation of 407A. Supremacy clause does not kick in. Federal preemption does not kick in. What's the best evidence of that? Answer to another question. This is in the Herald case the first time we can discover anywhere that the federal authority has ever been tried to have been invoked in relation to this methodology. Mr. Herald in Oregon, he was an attorney. He was the participating spouse. Made a great record. He did get a dissent that is very detailed. He filed a petition for cert and that petition for cert was denied on January 12th of this year. What does that mean? Well, it's not race violation. The state Supreme Court, if they deny cert in one case, it doesn't mean that they can't in the future grant cert on that same question. But if you look at their rules to grant cert, there has to be a compelling reason. When it comes to a state court decision, it states a state court has decided an important question of federal law that has not been but should be settled by this court, a possibility here, or has decided an important federal question in a way that conflicts with relevant decisions of this court. It has to be the argument of Shelley on this record that this violates his cadero. That question was laid right on the lap of the United States Supreme Court and they denied cert. I think it was Justice Hugo Black said that what that means is that on the given day, four of the nine justices didn't agree that we need to hear this case. So that argument that this preemption should apply, supremacy clause should apply, didn't even get to the point where four justices would say, hey, this is important enough for us to consider. Therefore, we believe that's the best evidence that's out there that preemption doesn't apply. Preemption is not an impediment in this case. All the courts which have considered this, including this court, has said this is inequitable. This situation does not tie into the way property should be distributed in our state. Crook flatly says it and then it apologizes and says, but sorry, we think preemption applies. In this way, the way we've done it on this record, it doesn't apply and that's what we would request this court find. A couple of the other questions as far as the Social Security benefits are concerned and the fact that Mr. Mueller may receive some Social Security, if you read our experts report and her testimony, she clearly calculated that into the numbers that she did. She looked at the fact that there was a 10-year marriage. She looked at the fact that some of the employment that Mr. Mueller has had would qualify him for Social Security benefits and she cut off what that amount was. It's not included in our figures. In the end, this pension that Lieutenant Mueller has is worth about $991,000. If you take the offset that we're requesting for Social Security, that's $377,000 and that leaves a pension that has a present value of $614,000 that is still left for the trial court to consider and distribute in this case. That gives us a fair resolution. It takes care of the problem and after all, what are attorneys and judges? We're problem solvers. People come to us with issues that are in some cases begging to be resolved that are truly not fair and we resolve them. In this case, there is no federal impediment. Preemption doesn't apply. There's a fix that's readily available to this court so we would ask that that fix be adopted and that the trial court and the appellate court be reversed in this circumstance and that the matter be remanded for reconsideration of the distribution of property in this case. Mr. Moran, what's your answer to the same question I asked Ms. Blackburn? What is in the record in this case on the description of the plan, how it's calculated, the pension? You know, the point that you argued. There is a printout from the plan that says pursuant to the statute, we have determined that based on the employment so far during the marriage, that the monthly benefit is $4,027 a month. In our reply brief, we cite to the Social Security Enabling Act here in the state of Illinois and we also cite to the provision, statutory provision, which sets the percentage, which I believe is 9.91 percent of Officer Mueller's salary that's taken and paid into the system as far as this pension is concerned. It's also, if you read the other decisions from the other states, they all say that these pensions, and it's pretty much like it's a given, a black letter type deal, where it's assumed that this is in lieu of Social Security. It's interesting when you look at it, and we didn't argue this because it didn't come up, but actually police officers and state workers in Illinois participate in the Social Security system. Apparently the federal government can issue waivers which would allow these workers to be covered by the system. In this case, the choice has been made not to accept that waiver, for the policeman at least, and to be covered in this instance. So in this record, I believe that's the totality of how that's handled. So to recap, the answer to my question is there's nothing in the record. Nothing definitive. Thank you. Thank you. In case 117876, Henry, the marriage of Shelley L. Mueller and Christopher Mueller will be taken under advisement as agenda number five. Mr. Moran and Ms. Blackburn, we thank you for your arguments today and excuse you at this time.